**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **LINDA PITTMAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 4:08-cv-257** |
| | § | |
| **COLLIN COUNTY, TEXAS,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is "Defendant's Motion for Summary Judgment and Brief" (Dkt. 13).

Because Plaintiff did not file a response and summary judgment is proper, Defendant's motion is

**GRANTED**.

## I. BACKGROUND

This is an employment discrimination lawsuit. Plaintiff Linda Pittman ("Pittman"), a

female, was employed by Defendant Collin County ("Collin County") in the Public Works

Department as a truck driver. On October 31, 2007, Pittman's employment with Collin County

was terminated. According to Collin County, Pittman was terminated because she was unable to

return to work after her Family Medical Leave Act ("FMLA") leave expired. In the present

lawsuit, Pittman claims Collin County's cited reason for her termination is mere pretext for

unlawful discrimination. In her Complaint, Pittman alleges gender discrimination under Title

VII and workers' compensation retaliation under sections 451.001 and 504.002(b) of the Texas

Labor Code.

1

Plaintiff did not respond to Defendant's motion for summary judgment. Therefore, the court accepts the evidence presented by Defendant's motion as undisputed. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). The undisputed material facts are as follows.

Pittman began her employment with Collin County in February 1998. As a truck driver, Pittman was primarily occupied with transporting building materials and equipment to specified locations within Collin County. The position required, among other things, that Pittman be able to get into and out of her truck without difficulty.

When Pittman began her employment, she received a copy of the Collin County Employee Handbook. According to the handbook, Collin County employees are permitted to take a maximum of twelve weeks of FMLA leave. Before returning to work, the County requires employees to submit a statement from a health care provider releasing the employee to return to work. According to the handbook, "[i]f you are not granted an extension of leave and you do not return to work upon conclusion of the requested FMLA leave, you may be considered to have abandoned your job and voluntarily terminated your employment with the county." (Jacobson Aff., Ex. A.)

Pittman took FMLA leave three times during her employment with Collin County. In 2003, Pittman suffered an injury to her right shoulder cuff, underwent surgery, and took FMLA leave. When Pittman returned to work she was initially placed on "light duty," which involved less strenuous activity such as flagging, checking roads, washing cars, and working in the parts department. In 2005, Pittman had a hysterectomy and again took FMLA leave. When she returned to work she was again placed on light duty. Pittman did not submit claims for worker's compensation during either of these absences and was apparently able to return to work in full

capacity without incident.

On July 14, 2004, Collin County adopted the "Strategic Goal and Objective Program." In short, the program charged the Public Works Department with the goal of upgrading and asphalting all Collin County roads within a ten year time frame. To meet this goal, the Public Works Department resolved to pave at least fifty miles of County roads per year. The enactment of this new program required the county to phase out and eventually eliminate "light duty" positions. By 2007, there were no light duty positions offered to any Public Works employee.

In 2007, Pittman tore the meniscus in her right knee while exiting her dump truck. The injury required surgery and Pittman requested and received Workers' Compensation and FMLA leave during her recovery. On September 13, 2007, the County's human resources manager, Diana Overhauser, contacted Pittman to review the county's policy regarding Pittman's FMLA end date:

> Our records indicate that you began Family Medical Leave on July 2, 2007. The end of your 12 weeks of FMLA will occur on September 21, 2007. If you require more time than the 12 week FMLA period, your Elected Official or Department Head will determine if business needs allow them to accommodate additional time off.

(*Id.* at Ex. F.) When Pittman's FMLA leave expired, she consulted with her treating physician, Dr. Douthit, but was not released to return to work. According to Dr. Douthit, Pittman's condition was expected to continue through at least October 29, 2007. On October 9, 2007, Jon Kleinheksel, the Director of the Public Works Department, contacted Pittman to discuss her employment status and her FMLA leave. In that letter, Kleinheksel informed Pittman that he would hold her job open for another four weeks:

> Your 12 weeks of leave expired on September 21, 2007. We have not yet filled your position in the hope that you would be able to return soon.

3

. . .

> As you know, we are expected to complete 50 miles of new road this year. Your position is vital to the success of this objective. We are already behind schedule because of the inclement weather that we have had this year. In the hopes that you will be released to return to work on October 29th, we will hold your position open until that date. However, if you are not able to return at that time, business needs will require that we fill the position as soon as possible and your employment will be terminated as of October 29, 2007.

(Kleinheksel Aff., Ex. G.) Kleinheksel's letter also assured Pittman, that her to return to work status would not affect her ability to receive workers' compensation benefits for her injury.

On October 29, 2007, Dr. Douthit released Pittman to return to work on light duty, but placed so many restrictions on her activities that it effectively precluded her ability to perform the essential functions and requirements of her job as a truck driver. According to Dr. Douthit's notes, Pittman could not return to work as a truck driver because she was not able to step up to the height of a big truck. (*See id.* at Ex. H.) Based upon Dr. Douthit's report and the county's business needs, Pittman's employment was terminated on October 31, 2007. (*See id.* at Ex. I.)

Pittman now claims Collin County's refusal to place her on light duty and ultimate termination of her employment following her 2007 surgery were the result of gender discrimination and workers' compensation retaliation. Collin County seeks summary judgment on Pittman's Title VII and Texas Workers' Compensation Act claims. According to Collin County, Pittman cannot establish that she was treated differently from her male counterparts. Additionally, Collin County argues that its policy requiring employees to return to work after 12 weeks of FMLA leave and the County's pressing business needs constitute legitimate, nondiscriminatory reasons for Pittman's discharge.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the nonmovant bears the burden of proof, the movant may discharge its burden simply by showing that there is an absence of evidence to support the nonmovant's case. *Id.* at 323, 325.

Once the movant has carried its burden, the nonmovant "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). Although the court must consider all evidence in the light most favorable to the nonmovant, "the nonmovant may not rely on mere allegations in the pleadings; rather, the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Therefore, "[i]f the opposing party does not [ ] respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2).

## III. ANALYSIS

### A. TITLE VII DISCRIMINATION

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where there is no direct evidence of discrimination, the Fifth Circuit applies the *McDonnell Douglas* burden-shifting analysis to Title VII sex discrimination claims. *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination. *Id.* If the plaintiff is able to present a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* The employer is not required to convince the court that it was actually motivated by its proffered reason. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Instead, the employer need only raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* To do so, the employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255. If a nondiscriminatory reason exists, "the presumptions of the *McDonnell Douglas* framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination." *Nasti*, 492 F.3d at 593. "To satisfy this burden, the plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination." *Id.* "A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quotations omitted).

To establish a prima facie case, Pittman must demonstrate (1) she is a member of a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were

treated more favorably. *Id.*

In the present case, Plaintiff has failed to establish that she was replaced by a similarly qualified male truck driver or that similarly situated male employees were treated differently. To the contrary, the undisputed evidence before the court indicates that Pittman was treated identically to her male counterparts. In 2003 and 2005 when Collin County allowed employees to return to work on light duty, Pittman and her male counterparts were permitted to return to work after their FMLA leave had expired but before they were physically capable of resuming their job requirements. However, in 2007, after instituting the Strategic Goal and Objective Program, Collin County employees were no longer permitted to return to work on light duty. Instead, the need for a full work crew required supervisors to replace employees unable to return to work after their FMLA leave expired. In 2007, the year Pittman took FMLA leave and was terminated, only one other Collin County employee took FMLA leave and failed to return. This employee, a male, was not permitted to return to work on light duty and was ultimately terminated. In fact, there is no evidence before the court that any Collin County employee was placed on light duty in 2007. Given the absence of any evidence to the contrary, it appears that Plaintiff was treated identically to her male counterparts. As such, Plaintiff has failed to establish the fourth element of her prima facie case of discrimination.

Even if Plaintiff had established the required elements of her prima facie case, Defendant proffered a legitimate nondiscriminatory reason for her discharge — Collin County's policy that all employees must return to work after 12 weeks of FMLA leave. Nothing before the court indicates that Defendant's nondiscriminatory reason for Pittman's discharge was pretext. The FMLA leave policy is clearly set forth in Collin County's employee handbook and Pittman

acknowledges that she received the handbook and was aware of the FMLA leave policy. (*See* Jacobson Aff., Ex. A, B.) Although there is evidence to suggest Collin County applied the policy with more leniency in the past by permitting employees to return on light duty, the evidence also indicates that pressing business needs required the County to strictly enforce its FMLA leave policy in 2007, when Pittman was terminated.[1] Finally, the evidence indicates that the policy was applied equally to both men and women. The only other employee terminated for failure to comply with the FMLA leave policy in 2007 was a male truck driver.

Based on the foregoing, Plaintiff has not created a genuine issue of material fact that Defendant discriminated against her when it terminated her for failing to return to work after her FMLA leave had expired.

## B. WORKER'S COMPENSATION RETALIATION

The Texas Workers' Compensation Act ("TWCA") prohibits employers from discharging or discriminating against an employee because the employee has "(1) filed a workers' compensation claim in good faith; [or] (2) hired a lawyer to represent the employee in a claim . . . ." TEX. LAB. CODE ANN. § 451.001 (Vernon 2006).

To prevail on an action for wrongful termination under the TWCA, a plaintiff must first establish that: (1) the employee filed a claim for workers' compensation benefits in good faith; (2) she suffered an adverse employment action; and (3) there is a causal link between the adverse employment action and the filing of the workers' compensation claim. *Burfield v. Brown, Moore*

---

[1]In May and June of 2007, Collin County experienced unusual rainfall that resulted in flooding and damage to roads. As a result, the County's Public Works Department was overwhelmed by the need to repair roads and clear debris. To meet these needs, it was critical that the County fill every Public Works position with an employee able to fully perform the functions of the job.

& *Flint, Inc.*, 51 F.3d 583, 589–90 (5th Cir. 1995); *Williams v. AT & T, Inc.*, No. H-07-0559, 2009 WL 938495, at *16 (S.D. Tex. April 6, 2009) (slip opinion); *Terry v. S. Floral Co.*, 927 S.W.2d 254, 257 (Tex. App.—Houston [1st Dist.] 1996, no writ). To establish causation, the employee must show that "but for" the filing of her workers' compensation claim, the discriminatory action would not have occurred when it did. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 (Tex. 1996). This causal link may be shown by direct or circumstantial evidence. *See id.* at 451. Examples of sufficient circumstantial evidence include: (1) knowledge of the claim by those making the decision to terminate; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for discharge was false. *See id.* If the causal connection is established, the burden shifts to the defendant to proffer a legitimate reason for the underlying employment action. *Williams*, 2009 WL 938495, at *16. If a nondiscriminatory rationale exists, the burden shifts back to the plaintiff to raise a fact issue as to the employer's retaliatory motive, either by direct or circumstantial evidence. *Id.*

An employer's knowledge of a workers' compensation claim, standing alone, is not sufficient to raise a genuine issue of material fact. *Santillan v. Wal-Mart Stores, Inc.*, 203 S.W.3d 502, 507 (Tex. App.—El Paso 2006, pet. denied). Additionally, Texas courts recognize that an employee cannot establish a causal link if the employer's uniform enforcement of a reasonable absence control policy requires termination. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). Therefore, if the employer's absence control policy requires termination, and the employee fails to demonstrate that the policy was not uniformly enforced or

did not require termination, the employer is entitled to judgment as a matter of law. *Baptist Mem. Healthcare Sys. v. Casanova*, 2 S.W.3d 206, 309–11 (Tex. App.—San Antonio 1999, pet. denied).

In the present case, Pittman's prima facie case fails because there is no evidence to establish a causal connection between Pittman's claim for workers' compensation and her termination. To the contrary, the undisputed evidence indicates Plaintiff was terminated for failure to comply with the County's uniform policy regarding FMLA leave. Although Pittman's supervisors were aware she was receiving workers' compensation benefits, this fact alone is not sufficient to establish her prima facie case. Because there is no evidence that Collin County's FMLA leave policy was unreasonable on its face or was applied disproportionately, Plaintiff's claim for workers' compensation retaliation fails as a matter of law. *See, e.g.*, *Daniel v. Goodman Mfg. Co.*, No. 13-03-00244-CV, 2005 WL 2158800, at *3–5 (Tex. App.—Corpus Christi Sept. 8, 2005, no pet.) (unpublished); *McFarland v. Goodman Mfg. Co.*, No. 01-03-00502-CV, 2004 WL 1277572, at *5 (Tex. App.—Houston [1st Dist.] June 10, 2004, no pet.) (unpublished); *Baptist Mem. Healthcare Sys. v. Casanova*, 2 S.W.3d 206, 309–11 (Tex. App.—San Antonio 1999, pet. denied).

## IV. CONCLUSION

Because the undisputed evidence before the court shows that there are no genuine issues of material fact with respect to Plaintiff's federal and state law discrimination claims, Defendant's motion for summary judgment (Dkt. 13) is **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED this the 30th day of March, 2010.**

10

_Richard A. Schell_

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE